THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARY BAKER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| | ) CASE NO. 1:22-CV-110-KFP |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security. | ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mary Baker filed a Complaint seeking review of the Social Security Administration's decision denying her application for disability, disability insurance benefits, and supplemental security income. Doc. 1. The Court construes Plaintiff's supporting brief (Doc. 16)[1] as a motion for summary judgment and the Commissioner's opposition brief (Doc. 17) as a motion for summary judgment. The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). Docs. 10, 11.

After scrutiny of the record and the motions submitted by the parties, the Court finds that Plaintiff's motion for summary judgment is due to be DENIED, the Commissioner's

---

[1] Without requesting leave, Plaintiff submitted a 24-page brief in direct violation of the Court's Order limiting the parties' briefs to 15 pages, *see* Doc. 4. In an effort to avoid delaying decision on this matter due to counsel's failure to adhere to the Court's page limitation, the Court has considered the brief *in toto*, but future violations of the Court's order will not be tolerated.

motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff was 51 years old when the Administrative Law Judge rendered a decision finding her not disabled. R. 18–19. Plaintiff alleged disability due to bipolar disorder, anxiety, and sleep issues. R. 58. Her initial application was denied, and she requested a hearing before an ALJ. R. 129, 151. Ultimately, the ALJ issued a decision finding Plaintiff not disabled. R. 19. The Appeals Council declined review, making the Commissioner's final decision ripe for judicial review. *See* 42 U.S.C. § 405(g); R. 1.

## II. THE ALJ'S DECISION

The ALJ determined Plaintiff has the following severe impairments: bipolar disorder, generalized anxiety disorder, and depression. R. 13. However, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* He then found that Plaintiff has the residual functional capacity to perform a full range of work with certain nonexertional limitations. R. 14. Specifically, the ALJ found that Plaintiff could perform simple and routine tasks, interact with others, and handle occasional changes in a routine work setting. *Id.*

Considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were other jobs in the national economy that Plaintiff could perform, such as a cashier or a front desk clerk. R. 17. The ALJ ultimately concluded that Plaintiff had not been under a disability from April 6, 2018, through the date of the ALJ's decision, August 2, 2021. R. 19.

## III.   STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. Under 42 U.S.C. § 405(g), the Court has jurisdiction to review the Commissioner's decision because Claimant has exhausted her administrative remedies. The Court is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Commissioner's findings of fact are conclusive if the Commissioner supported her findings of fact with substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). When determining whether the Commissioner supported his findings with substantial evidence, the Court must view the evidence as a whole, taking into account both favorable and unfavorable evidence relating to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). If the Court determines substantial evidence supports the Commissioner's decision, the Court must affirm—even if the Court finds a preponderance of evidence against the decision. *Id.*

## IV.   DISCUSSION

Plaintiff presents two issues on appeal: (1) the ALJ failed to adequately consider her subjective allegations and (2) the ALJ insufficiently evaluated Dr. Shakir Meghani's medical opinions. Doc. 16 at 1.

### A. The ALJ properly evaluated Plaintiff's subjective allegations.

"A claimant may establish that he has 'a disability through h[er] own testimony of pain or other subjective symptoms.'" *Nye v. Comm'r of Soc. Sec.*, 524 F. App'x 538, 543 (11th Cir. 2013) (citing *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). When a claimant attempts to prove disability based on h[er] subjective complaints, she must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of her alleged symptoms, or (2) evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Once the plaintiff establishes that she has an impairment that one could reasonably expect would produce her alleged symptoms, the ALJ must then evaluate "(1) the claimant's daily activities; (2) the 'duration, frequency, and intensity' of the claimant's symptoms; (3) '[p]recipitating and aggravating factors'; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms." *Nye*, 524 F. App'x at 543 (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). Then, the ALJ evaluates the plaintiff's statements in light of the evidence and considers any inconsistencies. 20 C.F.R. § 404.1529(c)(4). If the ALJ decides not to credit a claimant's testimony, he must articulate explicit and adequate reasons for doing so. *Foote*, 67 F.3d at 1561–62. Subjective complaint credibility is within the province of the ALJ, *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citation

4

omitted), and the Court cannot disturb that finding so long as he clearly articulates it and supports it with substantial evidence. *Id.* (citing *Foote*, 67 F.3d at 1561–62).

The ALJ found that Plaintiff's medically determinable impairments could be reasonably expected to cause the alleged symptoms but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the evidence. R. 15. In making this determination, the ALJ compared Plaintiff's subjective statements to her medical records which revealed mostly mild symptoms aside from a brief period when Plaintiff failed to take her medications. R. 15–16. Plaintiff claims that she is unable to work because she has poor concentration; cannot comprehend simple instructions; has poor long-term memory, cannot handle stress or changes in her routine; and is paranoid and nervous around others. R. 44–45, 289, 293–95. Yet, the ALJ recognized that most records showed that Plaintiff was fully alert and oriented, had average insight and judgment, good memory, and normal behavior. *Id.* In doing so, the ALJ provided a sufficient rationale linking his conclusion to the record evidence. *See Nichols v. Kijakazi*, No. 3:20-CV-225-SRW, 2021 WL 4476658, at *7 (M.D. Ala. Sept. 29, 2021) (citing *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)).

Plaintiff contends that the ALJ "cherry picked" certain findings to discredit Plaintiff's statements because the record contains evidence undermining the ALJ's ultimate decision. *See* Doc. 16 at 8–17. This argument suggests there is a plethora of evidence supporting Plaintiff's subjective statements that the ALJ ignored. The record does not support this premise. The ALJ relied on the objective medical records from the Ozark Specialty Clinic demonstrating that Plaintiff mostly displayed normal behavior, full

5

alertness, full orientation, a good or fair attention span, a goal-directed thought process, an appropriate or euthymic affect, a good or fair memory, good or fair impulse control, and average judgment and insight. *See* R. 382–412. As the ALJ recognized, these records even reflect that Plaintiff was "doing well" on one occasion and "doing great" on another. *Id.* These objective findings constitute substantial evidence that the ALJ relied on to discredit Plaintiff. *See Martin*, 894 F.2d at 1529. The ALJ could have also relied on Plaintiff's activities of daily living to undermine Plaintiff's statements. *See Dyer*, 395 F.3d at 1211 (holding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). Plaintiff admits that she is able to perform household chores with reminders, prepare meals, manage money, visit the library, attend church, read, spend time with her boyfriend, participate in Bible study, and watch television. R. 47–48.

Of course, the record contains some evidence supporting Plaintiff's position. As Plaintiff acknowledges, mental health symptoms are known to fluctuate, and the record suggests that Plaintiff's symptoms were sometimes more severe. Plaintiff points to the few records from Ozark Specialty Clinic that document more severe symptoms and claims that the ALJ mischaracterized the records as "unremarkable," especially when considering the relaxed nature of a medical clinic. Doc. 16 at 10. However, "[t]he question is not whether there is evidence to support [Plaintiff's] allegations, but whether there is substantial evidence to support the ALJ's credibility determination." *Tubens v. Comm'r of Soc. Sec.*, No. 6:20-CV-64-LRH, 2021 WL 1103698, at *9 (M.D. Fla. Mar. 23, 2021) (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007)). Plaintiff also takes issue with the ALJ's failure to discuss a May 2021 visit and her more frequent follow up

visits. Doc. 16 at 12. Again, the ALJ was not required to discuss each and every piece of evidence. *See Dyer*, 395 F.3d at 1211; *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808–09 (11th Cir. 2013) ("[T]he ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits.").

Nevertheless, the ALJ acknowledged the evidence supporting Plaintiff's subjective statements, including her history of bipolar, anxiety, and depression, her 2018 hospitalization, and the treatment records documenting more severe symptoms. *See* R. 15–16. For example, the ALJ discussed Plaintiff's six-day hospitalization for "escalating psychosis, irritability, distress, and hallucinatory behavior" and accompanying examinations illustrating her depressed mood, inappropriate affect, and panic attacks. *Id.* 15. The ALJ recognized that these more severe symptoms occurred at a time when Plaintiff had stopped taking her medications and explained that "subsequent records show improvement in symptoms and normal findings from examinations with conservative treatment." *Id.*

Plaintiff argues that the ALJ's consideration of Plaintiff's periodic failure to take her medications was improper because she was unable to afford medication. Doc. 16 at 6–7. She supports this argument by citing to *Dawkins v. Bowen*; that court found that the ALJ could not discredit subjective statements solely based on noncompliance attributable to financial difficulties, particularly where the record was riddled with evidence of those difficulties. *See* 848 F.2d 1211 (11th Cir. 1988). But the Eleventh Circuit later clarified that failure to consider noncompliance due to financial difficulties is harmless "where the ALJ

7

primarily based h[is] decision on factors other than non-compliance, and where the claimant's non-compliance was not a significant basis for the ALJ's denial of disability insurance benefits." *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275–76 (11th Cir. 2003)); *see also Jones v. Colvin*, No. 5:11-CV-3222-CLS, 2013 WL 1909485, at *4 (N.D. Ala. May 6, 2013).[2]

This record is not riddled with evidence of Plaintiff's inability to pay. Plaintiff testified that she sometimes ran out of medication because she could not afford to see a doctor. *See* R. 49. Plaintiff cites to four medical records that she contends show she was unable to afford her medications. *See* Doc. 16 at 7. Upon review, only one of those medical records states that she could not afford a medication, *see* R. 425, and another suggests as much, *see* R. 418 ("(2) Patient is self pay, financial difficulty; (3) Ran out of medications"). Regardless, the ALJ should have considered Plaintiff's inability to afford medication. *See Dawkins*, 848 F.2d at 1211. But the ALJ's decision was not significantly based on Plaintiff's noncompliance; the ALJ primarily based his decision on the objective medical evidence. Thus, any error was harmless. *See Beegle*, 482 F. App'x at 487 (citation omitted); *Jones*, 2013 WL 1909485, at *4. The ALJ's credibility determination is supported by

---

[2] Plaintiff also argued that her financial difficulties prevented her from obtaining consistent testing, which prevented the Court from determining whether Plaintiff's conditions are controlled when compliant. Doc. 16 at 6–7. But the ALJ only considered Plaintiff's failure to take her medications. *See* R. 15–16 ("Although the claimant was hospitalized on or around the alleged onset of disability for psychosis, she was not taking medications at the time[.]"). The ALJ did not—substantially or otherwise—rely on Plaintiff's failure to obtain consistent testing as a basis for discounting her statements. Accordingly, any error in failing to consider these forms of noncompliance is harmless. *See Beegle*, 482 F. App'x at 487 (citation omitted); *Jones*, 2013 WL 1909485, at *4.

substantial evidence, so the Court may not disturb this finding. *Mitchell*, 771 F.3d at 782 (citing *Foote*, 67 F.3d at 1561–62).

### B.    The ALJ sufficiently evaluated Dr. Meghani's medical opinions.

The regulations applicable to claims filed after March 2017 provide the following:

> [T]he ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)-(c) (2020). [In particular, a]n ALJ must explain how he considered the factors of supportability and consistency. [*See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).] The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. *Id*. The ALJ may but is not required to explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020).

*Nix v. Saul*, No. 4:20-CV-790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021).

An ALJ "is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion.[] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing *Dyer*, 395 F.3d at 1211).

In June 2021, Dr. Meghani assessed Plaintiff's mental RFC. *See* R. 468–71. Dr. Meghani found that Plaintiff had moderate and marked limitations in understanding and remembering; mild, moderate, and marked limitations in sustained concentration and persistence; mild, moderate, and marked limitations in social interaction; and moderate and marked limitations in adaptation. R. 469–71. Without offering any explanation, Dr.

9

Meghani concluded that Plaintiff's impairments would prevent her from working on a regular and sustained basis. *See* R. 468–71.

The ALJ found these conclusions unpersuasive "because Dr. Meghani has not treated the claimant since 2017" and he "failed to provide a reasonable explanation for the noted limitations." R. 17. Additionally, the ALJ reasoned that the suggested limitations were inconsistent with the evidence revealing normal examination findings and a favorable response to treatment. *Id.* While the ALJ may not have used the word "supportability," the ALJ's statement that Dr. Meghani's evaluation lacked explanation assures the Court that the ALJ found Dr. Meghani's evaluation unsupported by the evidence. *See Lewno v. Kijakazi*, No. 8:21-CV-1334-SPF, 2022 WL 3999282, at *5 (M.D. Fla. Sept. 1, 2022) ("Use of the words [supportability or consistency] is not required, however, as long as the ALJ's findings were ultimately based on these factors.") (citations omitted); *see also Thaxton v. Kijakazi*, No. 1:20-CV-616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) (stating that "the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record"). That Plaintiff omitted any argument to the contrary suggests that she agrees.

Plaintiff claims that the ALJ erred by not specifying which evidence is inconsistent with Dr. Meghani's findings. Doc. 16 at 18. But the ALJ already thoroughly discussed the medical records that contradict Dr. Meghani's conclusion in the immediately preceding discussion. *See* R. 15–16. Considering the ALJ's decision as a whole makes clear that the "normal examination findings" he refers to were those from the Ozark Specialty Clinic.

There are no other records to which the ALJ could be referring: excluding the Ozark Specialty Clinic's records, the only other medical evidence in the record are hospitalization records—which the ALJ did not describe as "normal"—and records documenting a mammogram and blood work—which are of little relevance. In fact, the ALJ previously referred to Ozark Specialty Clinic's findings as "normal" and "essentially normal." *See id.* Although the better practice would have been to either incorporate or cite to the specific evidence, on this record, the Court is able to discern to which evidence the ALJ referenced. Given that the ALJ has "no obligation to 'bridge' every piece of evidence he finds inconsistent with medical opinions," *Gogel*, 2021 WL 4261218, at *9 (citing *Dyer*, 395 F.3d at 1211), the ALJ was not required to restate his evaluations of those records when considering Dr. Meghani's opinions. *See Thaxton*, 2022 WL 983156, at *8 ("An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings.").

Plaintiff also argues that the ALJ improperly relied on snapshots of Plaintiff's mental health and that, in fact, many of Dr. Meghani's findings are actually consistent with the evidence. *See* Doc. 16 at 21. While there may be some evidence in this record supporting a finding favorable to Plaintiff, the ALJ was not required to discuss every piece of it. *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-01053-JHE, 2022 WL 860190, at *6 (N.D. Ala. Mar. 22, 2022) (citing *Dyer*, 395 F.3d at 1211). The Court cannot reweigh the evidence at this stage. *Bloodsworth*, 703 F.2d at 1239. The ALJ provided a sufficient rationale for discounting Dr. Meghani's opinions, so substantial evidence supports his evaluation. *See Nichols*, 2021 WL 4476658, at *7 (citing *Eaton*, 180 F. Supp. 3d at 1055).

Couched within Plaintiff's medical opinion argument is a challenge to the RFC. *See* Doc. 16 at 23. The ALJ based his RFC findings on his evaluations of Plaintiff's subjective statements and the medical opinions in light of the medical records, which demonstrated to the ALJ that Plaintiff experienced relatively minor mental health symptoms. *See* R. 14–17. In doing so, the ALJ provided a sufficient rationale linking the record evidence to his conclusion. Thus, substantial evidence supports the RFC. *See Nichols*, 2021 WL 4476658, at *7 (citing *Eaton*, 180 F. Supp. 3d at 1055). But Plaintiff argues the ALJ failed to include Dr. Meghani's limitations regarding work stresses and off-task behavior; to discuss whether Plaintiff's conditions would interfere with her ability to perform work throughout the workday; and to put forth which evidence he relied on to determine no limitation was necessary to address Plaintiff's off-task behavior. Doc. 16 at 23. These arguments denote a flawed understanding of the ALJ's obligations. The ALJ was not required to adopt any of Dr. Meghani's suggested limitations, *see Boone*, 2022 WL 4133288, at *5 (citation omitted), nor was he required to discuss his considerations of each and every piece of evidence, *see Gogel*, 2021 WL 4261218, at *9 (citing *Dyer*, 395 F.3d at 1211). While some evidence may exist supporting a more restrictive RFC, because substantial evidence supports the RFC, the Court must affirm. *See Jacks v. Comm'r, Soc. Sec. Admin.*, 688 F. App'x 814, 819–20 (11th Cir. 2017).

**V.   CONCLUSION**

For the reasons stated above, it is ORDERED as follows:

1.   Plaintiff's Motion for Summary Judgment (Doc. 16) is DENIED;

2.   The Commissioner's Motion for Summary Judgment (Doc. 17) is GRANTED; and

3.   The Commissioner's decision is AFFIRMED.

A final judgment will be entered separately.

DONE this 12th day of June, 2023.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE